Good morning. Good morning, your honors. May it please the court, William Piper appearing on behalf of Mr. Tilley. Let your co-counselor, your opponent, get seated. Thank you. This is an appeal of the district judge's dismissal of Mr. Tilley's age discrimination claim under the L.A. Larson Civil Rights Act and his Family and Medical Leave Act claims. Regarding the age discrimination claim, the district court basically granted summary judgment on the grounds that Mr. Tilley had not established a prima facie case. And it did so by indicating that because Mr. Tilley had not shown that he was replaced and because he did not show that there was any disparate treatment evidence, that therefore he could not establish a prima facie case. And the case law allows, it's not so inflexible, it allows a person to establish a prima facie case with evidence beyond simply showing that there was a replacement or showing disparate treatment. For example, let's just assume that there were four supervisors and one employee had 20 years of experience without any performance problems and the other three had one year of experience without any performance problems. And the employer decided to eliminate one position and decided on the person with 20 years of experience. You don't have a replacement and you don't have any disparate treatment evidence because there's no conduct involved that you can compare. But I think under those circumstances, you know, one could easily infer that the person with 20 years of experience, 20 years older than the other employees. What is the fact that we should infer that there's age discrimination? Well, I'm not saying you should infer just because I'm bringing the claim. I'm saying there's other evidence that the court should have considered in this situation. And that is the same evidence I presented in the Barnes case that I litigated in state court and that was considered to be sufficient. And that is there's a pattern here of individuals, whenever positions come into play or replacements, termination decisions, where a person substantially younger was selected or retained in place of the person who was substantially older and that began... Well, I did explain throughout my brief, it started with the managing director, Ms. Johnson. A guy named John Burns was the interim director, did a fine job when he was the interim director. He's 18 years older than Ms. Johnson and yet the defendant selected Ms. Johnson for the position. Then as soon as Ms. Johnson took... You pointed to examples of folks that you would believe were in the protected age class having adverse employment, but you really didn't, certainly at the district court, you didn't tell Judge Bell much more than that that would support an inference of some sort of discrimination with respect to any of those individuals, did you? Well, the fact that there's a pattern over the course of time, including Mr. Tilley, that whenever a decision was made regarding an individual who should get a position, the individual who was substantially younger was selected over the individual who was substantially older, even though in most instances the person substantially older had been in the position and had done a fine job. Let's take an example. One of the people you pointed to as being in the pattern was this fellow, Bob DeLeon, right? Correct. And there's, as you know, a Sixth Circuit Court opinion on that. Did you point Judge Bell to any evidence from which he could infer that Bob DeLeon had in fact been a victim of age discrimination so that what happened to him is in any way relevant to what happened to your client? Well, I mean, it's discussed somewhat in the opinion in the DeLeon case, but what happened basically was that Mr. DeLeon was... I want to be very specific. Some stuff may have happened to Bob DeLeon, and it may have been discussed in a different case, in a different opinion of this court. But when we look at it, what concerns me, speaking only for myself, is what evidence was before Judge Bell with respect to these other folks that you say make up a pattern? And the defendant has made a serious showing that what you did with Judge Bell was give him a number of names without much meat on the bone and said, Look, Judge Bell, here's a pattern of discrimination, and I fit right in with the pattern of names not having much evidentiary value unless there's facts from which Judge Bell could say, Yes, these other folks were the victim of discrimination. Well, the evidentiary values, for example, going back to the managing director, John Burns had been with the organization for a long time. He was 18 years older than Ms. Johnson, had actually done the position on an interim basis to kudos from everyone, and yet she was selected. The same situation with Travis Bartholomew being selected by Ms. Johnson. Jim Bedoin had done the job on an interim basis, had done an exceptional job, and yet they selected Travis Bartholomew despite that for the position, and he was 14 years younger than Mr. Bedoin. Same thing with the finance director, Diane DeWaters had done the position on an interim basis, done an exceptional job, and yet Ms. Johnson hired Carla Benison, who was 14 years younger, at the top of the pay scale, even though DeWaters was making less, instead. And there's a pattern here of just selecting the younger person despite the fact that they had a competent person in the position. And then that happened twice where the finance director was selected who was substantially younger. Then we have the Bob DeLeon situation. He had been doing the area supervisor position, doing a good job. Mr. Bartholomew moved Mr. DeYoung into the position. DeLeon was placed somewhere else, and it's described in that case, had substantial troubles in that position, and then moved on. There was a secretary who was replaced, an account clerk. Again, the people moving into the positions were substantially younger. The Dave Barnes situation, and then Terry Tilly. So you have a pattern here of older people being not considered, and then younger people moving into the position. Additional evidence, and by the way, all of this, the court didn't discuss any of this evidence. Do you consider pattern evidence in the context of pretext of whether the plaintiff has established a pretextual reason for the stated reason for the employer's discharge? I mean, doesn't the pattern normally go to that? And the problem you've got here is the prima facie case. You want us to hold that patterns of other people that are not comparables can establish a prima facie case, and I don't think that's what the law is right now. I mean, the law is the fourth prong of the circumstantial case can be demonstrated by replacement by a younger person or by comparable actions, but not patterns of uncomparable people. That's kind of what you're doing here. Aren't you asking for an expansion of the law here? No, I'm not asking for an expansion of the law. The law indicates that with respect to a prima facie case, it can be established not just by disparate treatment evidence, not just by replacement element, but by also direct or other circumstantial evidence that shows that the person was treated in a discriminatory way because of age. And I'm saying that the pattern here, which the judge didn't discuss at all at the district court level, can establish a prima facie case. It's not just evidence that can be used as a pretext. It's not a pattern unless you have shown there was no other reason but age as to these other people. I understand they were doing a good job and they didn't do it, but where's the age discrimination with the other people? Well, the fact is they were doing a good job. That's where you've got to show something to make some kind of pattern. I think when you have basically the same evidence, people doing a good job, and they're always selecting the younger person who hadn't done the job, how can you compare someone who has done the job with someone who hasn't done the job? In all instances, they're selecting the younger person and putting the older person in the position. What evidence, and please focus on the word evidence, did you cite to Judge Bell to establish that these other folks were doing a good job, such that he could look at them and say, yes, this could have been age discrimination with respect to the other people? Well, the commissioners whose depositions I talk all indicated that the people were doing a good job, and that's Diane DeWaters. They testified regarding Diane DeWaters. This is all in the record, Diane DeWaters, Mr. Burns, Jim Bedoin. Was that in this case or the Barnes case? The Barnes case, but I incorporated that in my brief. Let's talk about that. The defense points out that what you did with the Barnes case was take 500 pages of documents from a separate lawsuit and attach them and deliver them to Judge Bell for him to review without specifically citing him to a particular piece of testimony, a particular piece of evidence from that case. Is that accurate? Well, no, that's not accurate, because I also incorporated my brief as well from that case, which indicated all the evidence that was available, including what I just cited to the court. So it was all there. I don't think I should have to discuss it twice. It's discussed in the brief that I incorporated. I mean, I used the evidence from Mr. Tilley's case and the Barnes case and vice versa. That all shows a pattern of evidence, and the law is not that rigid. I mean, the case law indicates that you can establish a prima facie case not just by disparate treatment evidence and a replacement element. And there was other evidence that the district court ignored, which I discussed in my brief. It should have at least discussed it relevant to the issue of a prima facie case. So I believe what the district court erred was in saying you can only use replacement or disparate treatment evidence to establish a prima facie case. And I think there's plenty of evidence here from which one can infer that age was the reason why Mr. Tilley was dismissed. And then, of course, we get to the pretext issue. In that, again, the court came up with a conclusory, basically, statement saying, well, it's cited in this termination letter, and I don't believe that there's any pretext. But the court didn't conduct any analysis as to why the evidence cited wasn't pretextual. And first of all, he did turn in the reprimands on time, so that was clearly a pretext. He turned in the Berkeley report to an agent, and I don't see why that should have carried the day regarding termination and not be pretext. And then he, of course, got sick and couldn't get the last report in, although he had it substantially prepared. I probably should address the FMLA. I believe there's a tension in the Act where if an employer is covered, if they're a public agency, it wouldn't make any sense for the employee not to be allowed to take family and medical leave if they didn't have 50 employees, because then the language regarding the public agency being a covered employer wouldn't make any sense. It would be nugatory. Is there any indication to any court that has held that a public employee who works for an employer with less than 50 employees within the relevant radius is an eligible employee under the FMLA? No, and I could not find any case law that actually addressed that tension in the law. And what I would say is you just go to the traditional tenets of statutory interpretation, that if you've got reading two things together and basically it renders something meaningless, then you've got to harmonize the two sections. And the only way to harmonize the two sections is to say that a person who works for a public agency is covered, regardless of the number of employees that the public agency has. Also, you know, the FMLA is a remedial statute, and the law should be liberally interpreted to benefit the persons intended to be protected, and I think that... Do you think that's how the majority of the Supreme Court would view the statutory construction issue, or would they apply the plain language? Well, what I'm saying is the plain language, there's an insoluble conflict that you can't resolve, because if you try to apply both, it basically renders the section that a public agency is covered, regardless of the number of employees, nugatory, it's just meaningless. Because if that's the case, then... Did you reserve any rebuttal time? I did two minutes. Okay, go ahead. Good morning. Good morning, Your Honors. I'm Bob Stone from Smith, Hoy, Rice, and Rogge in Grand Rapids on behalf of the Wright Commission. With regard to the age discrimination, I think it's been discussed here already briefly, but I want to emphasize this is a straightforward disciplinary termination. It's not a pattern practice sort of case. It's an individual discharge for performance issues, and I think the law is quite well established with regard to the fourth element of a prima facie case, and that's really what's in dispute here. The first option on that is to be replaced by another... Can I get to the estoppel of the Family Leave Act for a moment? I mean, you've got a limited time, and I've got some concerns about it. Okay. The estoppel, I think, the Dabrowski case from the Sixth Circuit from, I believe it was 2011, laid out some fairly high thresholds for establishing equitable estoppel and adopted the Heckler standard from the U.S. Supreme Court. Who is Carla Benson? Carla Benson at the time was the head of finance for the Road Commission, and she also handled... I've got a certificate or something from him indicating that he does fall within the Family and Medical Leave Act. That was issued probably eight days after he'd already started the leave. So I think in terms of the detrimental reliance or the reliance component of equitable estoppel, the fact that that was after he had already gone on his leave... But she dates it back to August 2nd. Well, that's when the leave started, but it was issued on August 8th, I believe. She just indicates 8-8 is when she filled it out, but she at least, the head of finance at least, seemed to feel that there was a Family and Medical Leave Act that bound the county. I think the simple answer is they had been above 50 employees in the past, and they had slipped below it. And it was processed in error by the head of finance as a Family and Medical Leave Act, even though the Family and Medical Leave Act does not apply. And I think where that becomes not the determinative factor is that in the Dabrowski case... And I went through in, I think, great detail in the brief. there was a much stronger argument for detrimental reliance or equitable estoppel because Dabrowski requested the leave in advance. Everybody assumed it was Family and Medical. They gave him paperwork approving the Family and Medical Leave Act absence in advance of his taking the leave. Your book telling the employees what their rights are is that the Kalamazoo County Road Commission will comply with all aspects of the Family and Medical Leave Act. And they will. For example, they are a covered employer as a public employer, and one of the obligations of that would be to have a posting with regard to the Family and Medical Leave Act. And whether they have any eligible employees or not, they are required to do that. So there are some things that they would have to do to comply with Family and Medical Leave Act. Does that create an equitable estoppel? Excuse me? Does that create an equitable estoppel to say we're not bound by that? Well, I don't think posting or handbook language creates equitable estoppel because they have to do that as a covered employer. For example, with the posting, they have to put the posting up even if there's nobody eligible. And they have to do language in the handbook even if they have any eligible employees. So it's a generalized sort of representation. And I think what is required for equitable estoppel under the Dabrowski statute is the employee know this is some kind of gentleman. I mean, it's in your handbook. There's nothing that says anything but this. I mean, it doesn't say we're limiting this provision to X or Y. Well, it says they will comply with the Family and Medical Leave Act, which they have complied with the Family and Medical Leave Act. They have no employees that are eligible. I mean, that's the bottom line. The Dabrowski case, even though they had all these representations, individualized, and that's where I think the key is. You know, I mean, I understand what you're saying. But his argument isn't, as I understand it, isn't that you have 50 employees. I'm not buying his argument about the county is exempt. He is saying something like you can't deny you're giving us the benefit of that because of what you put in your handbook, what your finance director indicated, and therefore I fall in it. And he says I signed an affidavit that I would have, if I knew I wasn't covered, I would have dragged myself in, regardless how improbable that is. And that's what we're looking at. I'm trying to figure out why that doesn't apply. Well, I think as a matter of law, the simple act of having something posted or in the handbook does not, under the Dabrowski standard, create a sufficient reliance for equitable estoppel because Dabrowski did deny equitable estoppel to the court did to Mr. Dabrowski. It wasn't just a simple posting or a generic posting about what the Family Leave Act requires. There was a specific statement in the handbook, and I think it's important to quote it. It said employees covered under the Family and Medical Leave Act are full-time employees who have worked for the road commission and accumulated 1,250 work hours in the previous 12 months. It wasn't a generic explanation of the act. It specifically doesn't this specifically tell people exactly in Mr. Tilley's position who read it, well, if I was a full-time employee and I had 1,250 hours, I'm covered. I'm eligible. I think it tells the employees that they may be covered in a broad brush sort of way, but it doesn't make a representation of the employees that any specific leave of absence that they may request is covered under the Family and Medical Leave Act. Clearly it doesn't do that. But remember the summary judgment here, the question here, the judgment was entered not on whether he would in fact ultimately qualify. You want a judgment on the ground that he wasn't even eligible to apply in the first place. And doesn't this statement at least count as a factual statement to Mr. Tilley that he is eligible to apply? It's not a guarantee he's going to be approved, but given this statement, how can you be entitled to judgment as a matter of law on the ground that he is a stop from claiming he's eligible to apply? Well, he may be able to apply, but that doesn't mean he's an eligible employee in terms of coverage under the act, which would give him rights that he's trying to assert in this legal action. If he's not eligible, he's not eligible. And there's no question that he's not eligible. The question under Dabrowski seems to me that, you know, was there a sufficient affirmative individualized representation that this leave of absence that he took, and he relied on that in advance of taking the leave. Well, it depends on when. There's a hedge word in there, too, when practical or something. You can't always do it ahead of time. You don't know when you're going to have a heart attack or something. No, I think where practical goes to the 30-day notice requirement on the Family Medical Leave Act in the normal circumstance, I think that's a different situation than where we're talking about a reliant situation under an equitable estoppel theory where I took this solely in reliance on you assured me that this specific leave was covered by the family medical leave. And as the Dabrowski court said, you know, he would have done something differently, not that he could have. Isn't that normally an issue of fact for the trier of fact as opposed to an issue of law? Reasonable reliance, I mean, just as a general principle. I don't think there was adequate representations that he relied, even asserted in response to the summary judgment motion. The assertion that he relied on a handbook, I think as a matter of law, is not a sufficient grounds to. His own testimony that he relied on the representations in the handbook, that he was an eligible employee under FMLA, is not enough to go to the jury on that issue? No, because I don't think that putting something in a handbook that's required. I mean, if you gave every employee, if I put something in the handbook, let's say that the law says if I have even one eligible employee, I have to put that language in the handbook. And if I put that language in the handbook because I'm required to under the FMLA because of that one eligible employee, then the next step from that is that because every other employee has seen that language in the handbook, they can rely on that and they then become eligible employees even though only one has got the 1,250 hours or whatever the situation is. So putting something simply in the handbook, a general policy in a handbook about FMLA. I tend to disagree with you there, and I don't think that's what Judge Bell ruled. I mean, there's three prongs for equitable estoppel for the FMLA interference claim, and one is the definite misrepresentation, two is the reasonable reliance on the misrepresentation, and three, the detriment. You argue all three, that none of those three prongs are satisfied, but Judge Bell here really went on reasonable reliance, did he not? Correct. And so you're arguing for alternative basis for, but I think what Judge Bell argued or ruled is probably the strongest case for you. At least in my opinion, you lose as to the first and third prong. I see the handbook as a definite misrepresentation of eligibility. I also see the detriment of his loss of job, his losing his job to be detriment. I know you argue with that, but the thing that troubles me, I think the close issue is whether there is reasonable reliance, and I think this whole case is going to hinge on that because I also think that the evidence of age discrimination just isn't there. You argue the facts of Dombrowski, but the facts of Dombrowski are not binding on me, are they? The holding, only the holding of Dombrowski is binding on this panel. Is that correct? I think that's correct, Your Honor. And the holding is, this is Judge Boggs' opinion, accordingly we hold that in order to proceed, we hereby adopt the Hecker standard and the three prongs, and that is the holding. Then the opinion goes on to say that we apply, applying these standards to the facts of the case, we hereby rule the following, and you have to read it in there, but they're ruling that there wasn't reasonable reliance based upon the particular facts in Dombrowski. Our facts are different from Dombrowski, and although you say they're somewhat close or somewhat parallel, they're all different, and therefore I don't think I'm bound by the factual determination in Dombrowski how they applied those standards. I think I'm just bound by the three prongs that they adopted from Hecker. Do you disagree with me on that? No, Your Honor, I don't disagree with you. Okay, and as to these facts, how is there not reasonable reliance when Mr. Tilley thought that he was covered by FMLA due to the misrepresentation in the handbook, and therefore when he suffered these cold sweats at work, thought he could go to the hospital and was covered by FMLA, why isn't that reasonable reliance for his conduct there? Well, I think, and I understand I don't want to just argue the facts, but I think the claim that he would have stayed at work  I don't think he had to stay at work. That's the other thing. It's framed, Judge Bell said he has to prove a what-if. Now, what if you didn't know you were covered by FMLA leave? What if that happened? What would you do? And the answer to that should be, I don't know. I mean, I can't speculate. I can't prove a what-if. All I can do is tell you what I did, why I did it, and I relied upon my understanding of my rights to go to the hospital when I did, but I don't have an obligation to prove what would I have done if I hadn't known. I mean, I don't think that's a standard. Well, I think the answer to that is what... I think that's where Judge Bell erred, by the way. Well, I think Judge Bell was just simply saying there wasn't sufficient reliance or sufficient allegation of reliance. I mean, he's saying to prove reliance, you have to prove what you might have done otherwise, and I don't think that's what reasonable reliance says. Reasonable reliance says my conduct that I did was motivated by the fouling, not what I might have done had I not known this. I mean, I think they're different things, aren't they? Well, I think what the plaintiff, the appellate in this case, is asking this court to do is take a statute that clearly, under the terms of the statute, does not apply. This is not a covered situation under the terms and the definitions of the statute, and what he's asking the court to do is essentially, through its equitable power, expand the statute to cover this situation and give him rights under a statute that he clearly, under the basic facts of the situation, he does not have. And I think that is a very high threshold that is required for them to meet, and I think that is clear while you're not bound by the factual issues in the Dombrowski case. Well, at Dombrowski, we're bound by that there is an equitable estoppel claim for FMIA interference. That's what Dombrowski holds. That's a Sixth Circuit published opinion that we are bound by it, and what is required to demonstrate that to go to the jury are those three prongs, misrepresentation, reasonable reliance, and detriment, and that's what we're bound by. And here, all we're determining is there are sufficient issues of fact, genuine issues of material fact as to those prongs to let this get past summary judgment and go to the trier fact. And I think what we're saying is... Dombrowski said there wasn't, but the facts are different, so we're not bound by that conclusion in Dombrowski as to those facts. I understand that, but what I'm saying is because equitable estoppel, being an equity situation, is a very individualized situation, I think inherent in that reliance component of the Dombrowski decision is the individualized type of representation that this particular leave you want to take is covered by the FMLA, and then they do something in reliance, which is a far higher standard, as it should be in an equity situation, than just a general sort of handbook language that somebody may or may not be covered. I don't think it gets that high. It seems to me even if I buy that, when one of your executives say he's covered, that kind of meets that higher standard, doesn't it? I think if that had been done prior to the leave, I would agree with you, but I think the fact that he had already gone on a leave for a week, he had already submitted medical saying he was out for at least two months, it's hard to say you relied on that when you've already said this is what I'm going to do. The right to rely, in my view, is would most people reading that think he's covered? And I'm saying he at least says he thinks he's covered, but presumably so did an executive of the county think he was covered, even though it was afterwards. And I think that evidence goes to whether or not he had this right to rely on, as you say, a nebulous statement. Well, I think that the reliance has to be reasonable. And it's reasonable because an executive says he's covered. I think the difference there is the fact that that was done after he was over a week and had already gone on a leave. It's not whether he's right about relying. You're saying he didn't comply with the Family Leave Act, which is an entirely different thing, I guess. But I'm saying the right to rely, even though afterwards it seems to me when an executive says you're covered beforehand in a handbook and then afterwards in a form filled out, that certainly sounds like a jury question. The form that was signed on, I think, August 8th, if I'm not mistaken, like a week or a little over a week after the leave started, he could not have taken the leave in reliance on that form because you can't rely on something that happens afterwards. That's my point, and I don't know how to say it any clearer than that. But I think you have to look at the two things separately. No, I don't agree with you, and that's what I was trying to explain. I understand. I think you have to look at what did he rely on when he took the leave, and at most the allegation is he relied on the handbook. Was it preposterous? Would a reasonable employee think that his reliance was proper? And the answer is not only he think it, but so do the executives think it. And so I think you can look at that. Maybe you're right. I just think as a matter of law that handbook reliance is not reasonable reliance under the Dabrowski standard. Mr. Stone, you're out of time. If you want to wrap it up in a minute or so. Okay. I think we touched briefly on the age case, but I think that's been discussed. There is no prima facie case, and that's pretty much the end of the story on that. I do think that while the road commission did have this in their policy, I don't think what the road commission did, when you fit that with the acts of the plaintiff in this case, in terms of specifically looking at the timing and what's reasonable for him to rely on at the time he's doing it, not maybe later that he argues after this equitable estoppel thing comes up and all of a sudden he's scrambling to find something to retroactively justify his actions. I don't think the handbook by itself, which is all he alleges factually in terms of being relied on, if you will, at the time of the leave, is a reasonable or sufficient basis for reliance under Dabrowski because it's not an individualized representation, which I think is required to expand the statute under the equitable estoppel theory. The handbook is broad, and there are just... I know you're bound by the facts, but... Thank you very much. Thank you, Your Honor. Mr. Piper, you've got two minutes rebuttal. Thank you. Regarding the equitable estoppel, I guess I would add, beyond what the judges have already said, that the document Judge Schuheiner held up was an approval that occurred before the decision was made to terminate Mr. Tilley, so I think that should be considered as well. So contrary to what Mr. Stone said, he's relying not only on the handbook statement but also on the approval. And by the way, the finance director also served as the human resources director for the county, so she has approved the family medical leave. And I don't know why, as I argued in my brief, someone would have to go back and say, what would you have done had the facts been different? Well, the facts weren't different. Mr. Tilley can only react to the facts as they were presented to him. He had a handbook that said he was entitled to family and medical leave, and he had the human resources director saying, you're entitled to family and medical leave. Why would he have reacted other than any differently to those facts? So I think equitable estoppel clearly is established. To follow up on a question that Judge Leitman had, there is a quite factually similar Seventh Circuit case called Thomas v. Pearl Vision, Inc., 251 F. 3rd, 1132, Seventh Circuit, 2001. The facts are very similar as what Judge Leitman described as the facts occur in this handbook, which is if you've worked 1,250 hours over a year, you're entitled to family and medical leave. And that's exactly the situation that faced Mr. Tilley. And the court in that case held that that handbook applied the FMLA to all employees, even though that employer only employed 12 people within a 75-mile radius. So in that case, only looked at a handbook. He didn't have a situation where there's also a representation by the human resources director. So I think clearly equitable estoppel applies. And I'm sorry I did not cite that Seventh Circuit case in my brief, but I found it later. All right. Thank you, Mr. Piper. The case will be submitted. The remaining cases on the docket will be submitted on the briefs. And with that, you may adjourn the court.